IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| LINDA DIANE CARDEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner, )<br>Social Security Administration, )<br>)<br>Defendant. ) | 4:15-cv-01326-LSC |

**MEMORANDUM OF OPINION**

### I.   Introduction

The plaintiff, Linda Diane Carden, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income and Disability Insurance Benefits. Ms. Carden timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Carden was fifty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 34, 111.) She has a high school education. (Tr. at 35, 78-79.) Her past work experiences include employment as a Certified

Nursing Assistant, a cashier, and in mobile home sales. (Tr. at 34, 69.) Ms. Carden claims that she became disabled on March 15, 2008, due to limited use of her arms, depression, anxiety, chronic obstructive pulmonary disease ("COPD"), impaired immune system, asthma, Crohn's disease, arthritis, and migraines. (Tr. at 306, 312.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Carden last met the insured status requirements of the Social Security Act on March 31, 2012. (Tr. at 20.) She further determined that Ms. Carden did not engage in SGA during the period from her alleged onset date, March 15, 2008, through her date last insured, March 31, 2012. (*Id.*) According to the ALJ, Plaintiff's gastroesophageal reflux disease ("GERD"), hiatal hernia, gastritis, duodenitis, degenerative changes of the cervical and lumbar spine, hypertension, migraine headaches, Crohn's disease, COPD, status post multiple nerve releases, anxiety, and depression are considered "severe" based on the requirements set forth in the regulations. (Tr. at 21.) However, she found that these impairments neither meet

nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) She determined that "through the date last insured, the plaintiff has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except with the following limitations: never use feet for operation of foot controls; never kneel or crawl; no climbing of ladders, ropes or scaffolds; avoid concentrated exposure to irritants such as fumes, odors, dust, gases, poorly ventilated areas, and chemicals; avoid exposure to unprotected heights and hazardous machinery; no assembly line production requirements; unskilled work; only occasional direct interaction with the public; and only occasional interaction with co-workers." (Tr. at 23.)

According to the ALJ, through the date last insured, Ms. Carden was unable to perform any of her past relevant work. (Tr. at 34.) The ALJ further found that Plaintiff was a "younger individual age 18-49" on the date last insured, she has at least a high school education, and she is able to communicate in English, as those terms are defined by the regulations. (Tr. at 34-35.) Relying on the testimony from a vocational expert ("VE"), the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as hand packager, labeler, and garment sorter. (Tr. at 35.) The ALJ concluded her findings by stating that the plaintiff "was not under a 'disability,' as defined in the Social

Security Act, at any time between March 15, 2008, the alleged onset date, and March 31, 2012, the date last insured." (Tr. at 36.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Plaintiff's primary argument is that the ALJ's decision should be reversed and remanded because the ALJ failed to properly evaluate her subjective complaints of pain. She also makes a cursory argument that the ALJ did not consider her severe impairments in combination.

### A.   Credibility Determination

Plaintiff testified that she experiences flare ups from her Crohn's disease at least four to five times a week where it will "take her down" for a couple of hours

during the day. (Tr. at 54, 56). Plaintiff rated her pain with Crohn's disease at a level of ten to the point that she just lies down and screams. (Tr. at 55). She explained that she has to use the restroom at least six to seven times a day, for 30 to 35 minutes at a time and has no control over her bowels to the point that she wears a diaper. (Tr. at 67, 68). Plaintiff also testified that pain in her back, shoulders and neck affects her ability to work. (Tr. at 58). She classified the pain in her shoulders and arm at the level of eight. (Tr. at 60.) She further testified that anxiety and fatigue contribute to her inability to work. (Tr. at 62). She explained that her depression and anxiety worsened in 2011. (Tr. at 63.) Plaintiff testified that in March of 2012 she could walk for 200 feet at one time and lift about a gallon of milk. (Tr. at 65).

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 96-7p;[1]

---

[1]  Effective March 28, 2016, the Commissioner replaced SSR 96-7p with SSR 16-3p. The Commissioner explained that the new ruling "eliminat[ed] the use of the term 'credibility' from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding

*Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, the ALJ's decision reveals that she articulated several reasons to discredit Plaintiff's subjective complaints of pain that are supported by substantial evidence in the record. First, the ALJ found that the plaintiff had met the initial inquiry in that she had the following medically determinable impairments: GERD, hiatal hernia, gastritis, duodenitis, degenerative changes of the cervical and lumbar

---

symptom evaluation." SSR 16-3p at *1-2. Neither party has asserted that SSR 16-3p applies retroactively to Plaintiff's claim in this case, which was decided before March 28, 2016.

spine, hypertension, migraine headaches, Crohn's disease, COPD, status post multiple nerve releases, anxiety, and depression. (Tr. at 21.) However, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effect of her alleged symptoms were inconsistent with the evidence of record. (Tr. at 33-34.)

First, as the ALJ noted, the medical records do not support Plaintiff's claim to have disabling limitations. As to Plaintiff's migraines, she complained of migraine issues to her provider at Family Healthcare in March 2009, and was prescribed medication. (Tr. at 490). She presented at St. Vincent's emergency room two months later, in May 2009, again complaining of a migraine, but she was not admitted for treatment (Tr. at 415, 418). Plaintiff did not seek treatment for her migraines again, aside from ordinary medication refills, for almost two years, until she went to Gadsden Regional Medical Center in March 2011. (Tr. at 627-29). Plaintiff was diagnosed with acute severe migraine headache, but her symptoms were noted to be of "mild severity," and she was sent home. (Tr. at 627-29). Plaintiff went to Gadsden Regional Medical Center for a migraine on a third occasion in December 2011, but as before she was not admitted. (Tr. at 792-93). In short, Plaintiff sought emergency treatment for her migraines three times in four

years during the relevant period, and in each case she was not admitted, and no treatment beyond medication was required.

As to Plaintiff's COPD, Plaintiff was diagnosed in April 2010, and the doctor advised her to stop smoking. (Tr. at 428). A chest x-ray in September 2010 showed mild chronic COPD. (Tr. at 707). Nonetheless, Plaintiff's lungs were noted to be clear on several occasions in 2010, 2011, and 2012. (Tr. at 619, 653, 792, 839). In addition, in spite of repeated advice to quit smoking, Plaintiff continued to smoke throughout the relevant period before the date last insured. (Tr. at 413, 428, 561, 566, 665, 797, 842). One can reasonably assume that if Plaintiff's symptoms were as limiting as she claimed, she would have attempted to alleviate her symptoms by following her doctors' recommendations. Plaintiff's failure to do so provides further evidence that her condition was not of disabling severity. *See* 20 C.F.R. § 404.1529(c)(3)(vi).

As to Plaintiff's Crohn's disease, in May 2010 Plaintiff presented at Gadsden Regional Medical Center for abdominal pain. (Tr. at 733). There was no acute finding in abdomen CT scans, and Plaintiff was discharged the same day. (Tr. at 729, 730, 735). Another abdominal CT scan in October 2011 again indicated that Crohn's disease was the most likely diagnosis. (Tr. at 772). In May 2012, shortly after the date last insured, Plaintiff again went to Gadsden complaining of

abdominal pain, with an onset four days earlier, and again was discharged the same day. (Tr. at 838, 840). The mild findings on CT scans, and the conservative treatment that did not require hospital admission, both indicate that Plaintiff's Crohn's disease was not as severe as Plaintiff alleged.

As to Plaintiff's musculoskeletal symptoms and alleged joint pain, in September 2010 Plaintiff underwent a consultative examination by Dr. Hasmukh Jariwala. (Tr. at 566). Dr. Jariwala found that Plaintiff had no difficulty getting on and off the examination table, could stand on heels and toes, could squat and rise with minimal difficulty, and had normal gait and coordination. (Tr. at 567). He found "minimal to mild impairment" of Plaintiff's lumbosacral spine, but the range of motion in the rest of the joints and the cervical spine was normal. (Tr. at 567, 568). Motor strength, sensation, and reflexes were all normal, and the straight leg raise was negative. (Tr. at 567). In November 2010, it was noted that Plaintiff had no back pain. (Tr. at 652). In March 2011, it was noted that she did not have extremity pain or myalgias. (Tr. at 627). In April 2011, an examination at Quality of Life Health Services found that Plaintiff had tenderness in her hips, but was otherwise normal. (Tr. at 795). In December 2011, Plaintiff was again noted to have no musculoskeletal pain and a full range of motion. (Tr. at 795). Finally, in May 2012, shortly after the date last insured, Plaintiff still had a full range of motion.

(Tr. at 839). The mild-to-normal findings do not support Plaintiff's testimony of disabling limitations. (Tr. at 839).

As to Plaintiff's alleged mental impairments, in August 2007, prior to the alleged onset date, Plaintiff presented at Gadsden Regional Medical Center for right-sided chest pain, and while there received a mental health consultation. (Tr. at 442, 447). She was diagnosed with major depressive disorder. (Tr. at 447). In August 2010, June Nichols, Psy.D., performed a psychological consultative examination. (Tr. at 562). She found impairment in recent memory functions that might cause Plaintiff to have difficulty remembering and carrying out work-related instructions, and stated she might have difficulty with interpersonal relationships and withstanding the pressures of work. (Tr. at 564). Plaintiff was diagnosed with depression and anxiety again in April 2011, was advised to continue with psychiatric medication, and referred to Behavioral Health for further treatment. (Tr. at 619). There is no evidence Plaintiff ever followed up on the referral. Plaintiff's minimal, conservative treatment, as well as the generally mild findings on examination, provides additional evidence that her condition was not as limiting as she alleged during the relevant period. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

Also noted by the ALJ is the fact that the medical opinions in the record also contradict Plaintiff's testimony that her impairments were of disabling severity.[2] In September 2010, state agency reviewing physician George Walker, M.D., reviewed the medical evidence in the record and opined that Plaintiff could lift and carry twenty-five pounds frequently, fifty pounds occasionally, could both sit and stand six hours in an eight-hour workday, and had no postural or manipulative limitations. (Tr. at 584-86). The ALJ gave this opinion great weight because it was fully supported by the record. (Tr. at 34). There are no conflicting medical opinions regarding Plaintiff's physical abilities.

Also in September 2010, state agency reviewing psychologist, Angela Register, Ph.D., reviewed the medical records and opined that Plaintiff demonstrated the ability to complete simple, routine two-step commands, would be able to maintain attention and concentration for at least two hours at a time as required in order to perform simple tasks, sufficiently complete an eight-hour day and a forty hour week, and was capable of maintaining adequate social interactions with the public, peers, and supervisors without substantial restrictions. (Tr. at 593). She opined that, while Plaintiff's ability to adapt adequately to changes and

---

[2] Plaintiff has not challenged the weight the ALJ assigned to the medical opinions in the record. Therefore, she has abandoned this issue. *See Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994) ("Issues that clearly are not designated in the initial brief ordinarily are considered abandoned.").

demands of detailed tasks was limited, her symptoms were not at a level that would limit adapting adequately to changes and demands of simple tasks. (*Id.*). The ALJ gave this opinion great weight as well. (Tr. at 34).

Similarly, medical expert Dr. Doug McKeown, Ph.D., reviewed Plaintiff's medical records and testified at Plaintiff's hearing, shortly before the date last insured. (Tr. at 92-97). Notably, he explicitly considered Dr. Nichols's psychological consultative examination in formulating his opinion, and he noted that he did not find that it contained disabling limitations, although Plaintiff claims that Dr. Nichols's examination supports her allegation of disability. (Tr. at 93). Dr. McKeown opined that Plaintiff had depressive disorder, not otherwise specified, secondary to her medical problems. (Tr. at 94). He opined that she had no mental impairment in performing her activities of daily living, moderate limitations in social functioning, mild limitation in concentration, persistence, or pace, and no episodes of decompensation. (*Id.*). He concluded that Plaintiff would have moderate impairment in dealing with the general public, but all her other impairments would be mild. (Tr. at 94-95). The ALJ gave substantial weight to this opinion because it was well-supported by objective medical evidence and was consistent with the record as a whole. (Tr. at 31).

There are two medical opinions in the record that contain limitations greater than the ALJ assessed in the RFC, but the ALJ gave each little weight. First, in August 2011, Jack Bentley, Ph.D., performed a consultative examination on Plaintiff and found the only diagnoses were dysthymia and nicotine dependence. (Tr. at 756). He found Plaintiff had low-average to average intelligence, and a favorable prognosis for her present level of functioning. (Tr. at 756, 757). Nevertheless, he went on to opine that Plaintiff had extreme limitations in the ability to understand and remember complex instructions. (Tr. at 761-62). The ALJ gave this opinion little weight because Plaintiff performed skilled work in the past, and there was no evidence to suggest that she currently had an extreme limitation in that area. (Tr. at 34). The other opinion is that of Robert A. Storjohann, Ph.D., who examined Plaintiff in January 2014, almost two years after the date last insured. (Tr. at 1089). He relied entirely on Plaintiff's self-report for her historical information. (*Id.*). He found that Plaintiff had normal speech, was oriented to person, place, situation, and time, could perform simple mathematical calculations, and had intact recent and remote memory. (Tr. at 1092). Her thought processes and speech were logical, coherent, and goal-directed, and her intelligence was average. (*Id.*). Nevertheless, Dr. Storjohann opined that Plaintiff appeared to have marked deficits in her ability to understand, carry out, and remember instructions

in a work setting, and her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (Tr. at 1093). The ALJ gave this opinion little weight because the examination was performed well after the date last insured, was an attorney referral, and conflicted with the other psychological treatment notes, examinations, and opinions in the record (Tr. at 31).

As also discussed by the ALJ, Plaintiff's self-reported daily activities do not support her subjective claims, either. In her function report, Plaintiff reported she prepared simple meals, did laundry and some cleaning, tried to go outside daily, drove, shopped in stores for groceries and clothing for her children every two weeks for at least an hour or more, spent time with other people, talked with her family in Florida and to her mother and her niece daily, and went to church regularly. (Tr. at 337-39, 563). Further, while Plaintiff indicated in her function report that she had difficulty following written instructions, she effectively answered the written questions contained in the function report. (Tr. at 340). Plaintiff contends that these activities were of short duration, which should not disqualify her from a finding of disability. However, while participation in everyday activities does not necessarily preclude a finding of disability, the ALJ still may consider such activities as evidence undermining a claimant's allegations of disabling limitations. 20 C.F.R. § 416.929(c)(3)(i); SSR 96-7p; *see also Macia v.*

*Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not [] prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process"); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) ("the ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily activities, in making the finding about pain"). Here, the ALJ did not rely solely on Plaintiff's daily activities in discounting her subjective complaints, nor did she find Plaintiff's activities to be dispositive evidence of her ability to work. (Tr. at 29). As demonstrated above, substantial evidence supports the ALJ's decision to discredit Plaintiff's testimony of disabling symptoms and limitations.

### B.   Consideration of Impairments in Combination

Plaintiff makes a cursory argument that the ALJ did not consider her impairments in combination. The ALJ must consider the combined effect of all of a claimant's impairments in the assessing whether the claimant is disabled. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). However, the ALJ's decision here demonstrates that she properly considered all of the plaintiff's impairments as a whole in evaluating Plaintiff's claim, including when assessing Plaintiff's RFC. (Tr. at 15-42.) Specifically, at step three, the ALJ found that "the severity of the claimant's impairments, even in combination, does not equal the level of severity

contemplated in the listings." (Tr. at 21.) Then at step four, she further stated that she had considered Plaintiff's impairments "singularly and in combination" and that she "considered all symptoms" in assessing the plaintiff's RFC. (Tr. at 21, 23.) Such language has been held by the Eleventh Circuit to be sufficient to show that the ALJ considered the combined effect of a claimant's impairments. *See Tuggerson-Brown*, 572 F. App'x at 951-52 (citing *Wilson v. Barnhart*, 284 F.3d 1219, at 1224–25 (11th Cir. 2002); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Carden's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 22, 2017.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704